**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **HARTFORD CASUALTY INSURANCE COMPANY**, | ) ) ) |
| *Plaintiff*, | ) ) |
| | ) Case No.  1:26-cv-4610 |
| v. | ) ) |
| **SCHOLARSHIPS.COM, LLC** and **PAIGE CAROLINE GOLDSTONE**, | ) ) ) |
| *Defendants*. | ) ) |
| . | ) |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, HARTFORD CASUALTY INSURANCE COMPANY ("Hartford"), by and through its attorneys, Michael J. Duffy, Michael J. O'Malley, and Joanna C. Kocol of Wilson Elser Moskowitz Edelman & Dicker LLP, brings this Complaint for Declaratory Judgment against Defendants, SCHOLARSHIPS.COM, LLC ("Scholarships.com") and PAIGE CAROLINE GOLDSTONE ("Claimant"), and states as follows:

**STATEMENT OF THE CASE**

1.      This action seeks a declaration, pursuant to 28 U.S.C. § 2201 (the Declaratory Judgment Act), that there is limited eroding $5,000 Employment Practices Liability ("EPL") Coverage applicable to the claims asserted by Claimant relating to the Department of Human Rights ("IDHR") charge styled: *Paige Caroline Goldstone v. Scholarships.com*, Charge No. 2026CF1057, filed on or about February 20, 2026 (the "IDHR Charge"), and that there is no other available coverage for these claims under any other coverage parts in the insurance policy issued to Scholarships.com bearing policy number 83 SBA PK5799 with effective dates of September 16,

2025 to September 16, 2026 ("the Policy"). Alternatively, Hartford seeks a rescission of Endorsement No. 3, Limits of Liability Change Endorsement – Employment Practices Liability Insurance, Form SS 09 58 03 16, which was subsequently added to the Policy.

2. A copy of the IDHR Charge is attached as "**Exhibit A**".

3. An actual and justiciable controversy exists between Hartford on the one hand, and Scholarships.com on the other hand, as Scholarships.com contends that there is $500,000 in available EPL Coverage whereas Hartford contends only $5,000 is afforded and Hartford denies there is coverage under any other coverage part in the Policy.

4. Under the terms and provisions of Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202, this Court is vested with the power to declare the rights and liability of the parties hereto and to grant such relief as it deems necessary and proper.

## PARTIES

5. Hartford is an insurance company incorporated under the laws of the State of Indiana with its principal place of business at 501 Pennsylvania Parkway, Suite 400, Indianapolis, IN 46280-0014. Thus, Hartford is a citizen of Indiana.

6. Scholarships.com is a limited liability company organized in the State of Illinois, with its principal place of business at 513 Central Avenue, Suite 300, Highland Park, Illinois 60035.

7. Upon information and belief, and based upon a diligent search, all members of Scholarships.com are citizens of the State of Illinois.

8. Claimant is an individual and a citizen of the State of Illinois.

9. Claimant is named herein only as a nominal defendant because she is the claimant in the IDHR Charge and has a potential interest in this litigation.

2

**JURISDICTION AND VENUE**

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 as the amount in controversy exceeds $75,000.00, exclusive of costs and interest, and the parties are citizens of different states.

11. Venue is proper in this District pursuant to 28 U.S.C. §1391 because Scholarships.com's principal place of business is in this District, the relevant insurance policy was issued in this District, and facts giving rise to this dispute occurred within this District.

**BACKGROUND**

**A. THE CLAIM AND IDHR CHARGE**

12. Claimant began her employment as a writer with Scholarships.com on May 12, 2025. *See* Ex. A.

13. Her responsibilities included interviewing scholarship recipients and writing stories for the company's website. She contends she could perform her tasks at home with minimal on-site presents. *See* Ex. A.

14. Claimant alleges she suffers from post-traumatic stress disorder ("PTSD"). *See* Ex. A.

15. Claimant said her workspace was a small, windowless office that exacerbated her PTSD symptoms. *See* Ex. A.

16. On November 17, 2025, after consulting with her medical providers, Claimant formally requested a reasonable accommodation of a hybrid work schedule allowing her to work remotely three days a week to better manage her systems. *See* Ex. A.

17. On November 19, 2025, Scholarships.com's human resources provider, HR One Source, Inc. ("One Source") requested medical documentation from Claimant, which was provided on December 2, 2025. *See* Ex. A.

18. During this period, Claimant said her condition worsened, and she requested to work from home while awaiting a decision. *See* Ex. A.

19. The interim request for an accommodation was denied on December 11, 2025. *See* Ex. A.

20. On January 14, 2026, Scholarships.com formally denied Claimant's request for an accommodation, stating that her position required regular on-site presence due to the nature of the work and that remote work would create an undue hardship for the business. *See* Ex. A.

21. Claimant disputes this rationale, asserting that her job duties did not require her physical presence and that collaboration could be accomplished virtually. Claimant further alleges that the company failed to engage in any interactive process to explore alternative accommodations or to communicate with her healthcare provider. *See* Ex. A.

22. On January 29, 2026, Claimant's counsel set a Letter of Representation ("January 29, 2026 Letter") via email to One Source, Lawrence A. Gerber, CEO of Scholarships.com, and Phillip Gerber, Executive Vice President of Scholarships.com.

23. The letter set forth the factual and legal basis for discrimination and constructive discharge claims against Scholarships.com. A true and correct copy of the January 29, 2026 Letter is attached as "**Exhibit B**."

24. The January 29, 2026 Letter began by asserting that the firm represented Claimant in connection with "Scholarships.com's unlawful denial of her reasonable accommodation under the Illinois Human Rights Act". *See* Ex. B.

25. The January 29, 2026 Letter also stated, among other things:

- "This letter sets forth the factual and legal basis for Ms. Goldstone's claim." Ex. B, p.1.

- "These facts give rise to claims for failure to accommodation [sic] in violation of the IHRA." Ex. B, p.2.

- "The Act prohibits employers from discriminating against qualified individuals with disabilities and requires employers to provide reasonable accommodations unless doing so would pose an undue hardship. Ms. Goldstone is a qualified individual with a disability who can perform the essential functions of her position with the requested accommodation." Ex. B, p.2.

- "The IHRA requires employers to engage in an interactive process with employees requesting accommodations. Scholarships.com failed to do so." Ex. B, p.2.

- "This conduct reflects bad faith and a predetermined intent to deny the accommodation regardless of its reasonableness." Ex. B, p.3.

- "We are giving the company until the end of this week to change its mind with respect to the accommodation. If the company continues to refuse to do so, Ms. Goldstone will consider herself constructively discharged." Ex. B, p.3.

- "As a result of Scholarships.com's unlawful conduct, Ms. Goldstone has suffered and continues to suffer significant damages, including emotional distress, anxiety an exacerbation of her PTSD symptoms." Ex. B, p.3.

26. Claimant resigned from her position on February 2, 2026, characterizing her departure as a constructive discharge resulting from the employer's refusal to accommodate her disability. *See* Ex. B.

27. Claimant filed a charge with the IDHR on or about February 18, 2026. The IDHR Charge alleges Scholarships.com discriminated against her on the basis of disability by denying reasonable accommodations and constructively discharging her. *See* Ex. A.

28. The IDHR Charge was tendered to Hartford on or about March 3, 2026.

**B.** **_COVERAGE CORRESPONDENCE_**

29. Following Scholarships.com's tender of the IDHR Charge, Hartford issued a coverage position letter dated March 20, 2026 (the "March 20, 2026 Letter") in which it denied

5

coverage under the Business Liability and Umbrella Coverage Parts and agreed to provide coverage under the EPL Coverage Part with an eroding limit of $5,000.

30. A true and correct copy of the March 20, 2026 Letter is attached as "**Exhibit C**."

31. On March 23, 2026, Scholarships.com issued a letter (the "March 23, 2026 Letter") challenging Hartford's March 20, 2026 coverage determination and contending that the EPL policy limit is $500,000.

32. A true and correct copy of the March 23, 2026 Letter is attached as "**Exhibit D**."

33. On April 13, 2026, Hartford, through counsel, issued a response ("Hartford's Response to Pushback Letter") to the March 23, 2026 Letter, reiterating Hartford's prior coverage position.

34. A true and correct copy of Hartford's Response to Pushback Letter is attached as "**Exhibit E**."

## C. *THE MIDTERM APPLICATION TO INCREASE EPL LIMITS*

35. Hartford issued the Policy which, subject to its terms, provided certain claims-made EPL Coverage with a limit of $5,000 which was eroded by defense fees and costs.

36. On February 2, 2026, after the denials of the Claimant's accommodation requests under the IHRA, and receipt of the January 29, 2026 Letter from counsel, placing Scholarships.com on notice of discrimination and constructive discharge claims, and on the same day Claimant resigned due to Scholarships.com failure to accommodate her disability, Scholarships.com, through its agent Steve Wise, requested an application to increase the EPL Coverage limit from $5,000 to $500,000.

37. The application was completed and signed by "Larry Gerber" on February 2, 2026 (the "Midterm Application").

38. A true and correct copy of the Midterm Application is attached as "**Exhibit F**."

39. The Midterm Application requested that the increased EPL limits be effective on a retroactive basis to February 1, 2026, the day before Claimant resigned.

40. Larry Gerber was also a recipient of the January 29, 2026 Letter and he received the January 29, 2026 Letter before February 2, 2026. *See* Ex. B.

41. The Midterm Application was submitted to Hartford by Scholarships.com's agent, Steve Wise, on February 10, 2026.

42. A true and correct copy of the email correspondence from Steve Wise to Hartford submitting the Midterm Application is attached as "**Exhibit G**."

43. Larry Gerber was aware that Claimant resigned and alleged she was constructively discharged before the Midterm Application was submitted to Hartford on February 10, 2026.

44. Question 5 in the Midterm Application asked, "How many employment related claims, administrative proceedings, EEOC action letters or attorney letters or third-party claims relating to discrimination or harassment have you experienced in the past three years?" *See* Ex. F.

45. Scholarships.com answered "None" in response to Question 5. *See* Ex. F.

46. In fact, Scholarships.com had received an employment related claim and attorney letter relating to discrimination on January 29, 2026, just four days before the Midterm Application was completed.

47. Question 6 in the Midterm Application asked, "Is any person proposed for coverage aware of any fact or circumstance or any actual or alleged act, error or omission which might give rise to a claim that would fall within the scope of the proposed coverage?" *See* Ex. F.

48. Scholarships.com answered "No" in response to Question 6. *See* Ex. F.

49. In fact, Scholarships.com was aware of a fact or circumstance which might give rise to a claim that would fall within the EPL Coverage.

50. Specifically, before completing the Midterm Application, Scholarships.com and Lawrence Gerber were aware of the allegations in the January 29, 2026 Letter and were aware that Claimant resigned, claiming she was being discriminated against based on her disability and she was constructively discharged.

51. Indeed, it was precisely because Scholarships.com and Lawrence Gerber were aware of these allegations and Claimant's resignation that Scholarships.com sought a substantial increase of EPL Coverage Limits with a retroactive effective date.

52. The application stated: "APPLICANT'S STATEMENT: I, being duly authorized, have read the above application and declare that to the best of my knowledge and belief all of the foregoing statements are true, and that these statements are offered as an inducement to the Company to issue the policy for which I am applying." *See* Ex. F.

53. Reasonably relying on the representations and declarations of Scholarships.com in the Midterm Application, and unaware of the claims against Scholarships.com, Hartford agreed to issue Endorsement No. 3, Limits of Liability Change Endorsement – Employment Practices Liability Insurance, Form SS 09 58 03 16.

54. Scholarships.com misrepresented that it experienced no employment-related claims or attorney letters relating to discrimination in the last three years.

55. Scholarships.com omitted that it experienced employment-related claims and attorney letters relating to discrimination in the last three years.

8

56. Scholarships.com misrepresented that no person was aware of any fact or circumstance or any actual or alleged act, error or omission which might give rise to a claim that would fall within the scope of the proposed coverage.

57. Scholarships.com omitted that it was aware of a fact or circumstance or any actual or alleged act, error or omission which might give rise to a claim that would fall within the scope of the proposed coverage.

58. Scholarships.com's omissions and misrepresentations in connection with the Midterm Application were material to the issuance of Endorsement No. 3, Limits of Liability Change Endorsement – Employment Practices Liability Insurance, Form SS 09 58 03 16.

59. Had Hartford been aware of the true facts and circumstances, including the claims made against Scholarships.com at the time the Midterm Application was submitted, Hartford would not have issued Endorsement No. 3, Limits of Liability Change Endorsement – Employment Practices Liability Insurance, Form SS 09 58 03 16.

## THE POLICY

60. Subject to its terms, the Policy provides certain Business Liability and Umbrella Coverage as well as certain claims-made EPL Coverage to Scholarships.com.

61. A true and correct copy of the Policy is attached as "**Exhibit H**."

### *BUSINESS LIABILITY COVERAGE*

62. The Business Liability Coverage Part, states in part:

### A. *COVERAGES*

#### 1. *Business Liability Coverage (Bodily Injury, Property Damage, Personal And Advertising Injury)*

#### *Insuring Agreement*

a. *We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and*

9

> *advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply.*

*See* Ex. H.

63.     The Business Liability Coverage Part also contains the following exclusions, in part:

**B.  EXCLUSIONS**

***1. Applicable To Business Liability Coverage***

*This insurance does not apply to:*

***a. Expected Or Intended Injury***

> ***(1)*** *"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.*
>
> > *This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property; or*
>
> ***(2)*** *"Personal and advertising injury" arising out of an offense committed by, at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury".*

* * *

***e. Employer's Liability***

> *"Bodily injury" to:*
>
> ***(1)*** *An "employee" of the insured arising out of and in the course of:*
>
> > *(a) Employment by the insured; or*
> >
> > *(b) Performing duties related to the conduct of the insured's business, or*
>
> ***(2)*** *The spouse, child, parent, brother or sister of that "employee" as a consequence of (1) above.*
>
> > *This exclusion applies:*
>
> ***(1)*** *Whether the insured may be liable as an employer or in any other capacity; and*
>
> ***(2)*** *To any obligation to share damages with or repay someone else who must pay damages because of the injury.*
>
> > *This exclusion does not apply to liability assumed by the insured under an "insured contract".*

* * *

10

**r. Employment-Related Practices**

    *"Personal and advertising injury" to:*

    *(1) A person arising out of any "employment-related practices"; or . . . [As modified by Business Liability Coverage Form Amendatory Endorsement, Form SS 00 60 09 15].*

*See* Ex. H.

64.    The Business Liability Coverage Part also provides the following definitions:

**5.** *"Bodily injury" means physical:*

    *a. Injury;*

    *b. Sickness; or*

    *c. Disease sustained by a person and, if arising out of the above, mental anguish or death at any time.*

* * *

**8.** *"Employee" includes a "leased worker". "Employee" does not include a "temporary worker".*

* * *

**13.** *"Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".*

* * *

**16.** *"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.*

* * *

**17.** *"Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:*

    *a. False arrest, detention or imprisonment;*

    *b. Malicious prosecution;*

    *c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person or organization occupies, committed by or on behalf of its owner, landlord or lessor [as modified by Business Liability Coverage Form Amendatory Endorsement, Form SS 00 60 09 15]*

    *d. Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;*

11

*e. Oral, written or electronic publication of material that violates a person's right of privacy;*

*f. Copying, in your "advertisement", a person's or organization's "advertising idea" or style of "advertisement";*

*g. Infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement"; or*

*h. [Deleted per Business Liability Coverage Form Amendatory Endorsement, Form SS 00 60 09 15]*

\* \* \*

**20.** *"Property damage" means:*

*a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or*

*b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of "occurrence" that caused it.*

*As used in this definition, "electronic data" is not tangible property.*

\* \* \*

**22**. *"Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.*

**23**. *"Volunteer worker" means a person who:*

*a. Is not your "employee*

*b. Donates his or her work;*

*c. Acts at the direction of and within the scope of duties determined by you; and*

*d. Is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.*

\* \* \*

*See* Ex. H.

### UMBRELLA COVERAGE

65. The Umbrella Coverage Part states, in part:

### SECTION I - COVERAGES

### INSURING AGREEMENTS

**A.** **Umbrella Liability Insurance**

**1.** *We will pay those sums that the "insured" becomes legally obligated to pay as "damages" in excess of the "underlying insurance" or of the "self-insured*

12

*retention" when no "underlying insurance" applies, because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies caused by an "occurrence". But, the amount we will pay as "damages" is limited as described in Section **IV -LIMITS OF INSURANCE.***

*See* Ex. H.

66.     The Umbrella Coverage Part also provides the following definitions:

***4.     Personal and Advertising Injury***

*This policy does not apply to "personal and advertising injury". EXCEPTION This exclusion does not apply to the extent that coverage for such "personal and advertising injury" is provided by "underlying insurance", but in no event shall any "personal and advertising injury" coverage provided under this policy apply to any claim or "suit" to which "underlying insurance" does not apply. Any coverage restored by this EXCEPTION applies only to the extent that such coverage provided by the "underlying insurance" is maintained having limits as set forth in the Schedule of Underlying Insurance Policies. [As modified by Following Form Endorsement -Personal and Advertising Injury, Form SX 24 33 06 10].*

* * *

***14.     Expected or Intended***

*"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".*

*This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.*

***15.     Employer Liability***

*This policy does not apply to any injury or damage to: (A) Any "employee" of any "insured" arising out of or in the course of employment by any "insured"; or (B) The spouse, child, parent, brother or sister of the "employee" as a consequence of (A) above; or (C) To you or any of your partners or members, (if you are a partnership, joint venture), or your members (if you are a limited liability company). This exclusion applies:*

*(1) Whether any "insured" may be liable as an employer or in any other capacity; or*

*(2) To any obligation to share "damages" with or repay someone else who must pay "damages" because of the injury or damage. [As modified by Endorsement Exclusion -Employee Injury (With Contractual Liability Exception), Form SX 21 77 03 19]*

***EXCEPTION:***

*This exclusion does not apply to liability assumed by the "insured" under an "insured contract". To the extent this exclusion does not apply, the insurance provided under this Umbrella policy for the employer's liability risks described*

13

*above will follow the same provisions, exclusions and limitations that are contained in the applicable "underlying insurance", unless otherwise directed by this insurance.*

\* \* \*

### 18.    *Employment Practices Liability*

*Any injury or damage to:*

*1. A person arising out of any:*

> *(a) Refusal to employ that person;*

> *(b) Termination of that person's employment; or*

> *(c) Any employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or*

*2. The spouse, child, parent, brother or sister of that person, as a consequence of "bodily injury" or "personal and advertising injury" to that person at whom any of the employment-related practices described in paragraphs (a), (b), or (c) above is directed.*

*This exclusion applies:*

*i. Whether the "insured" may be liable as an employer or in any other capacity; and*

*ii. To any obligation to share "damages" with or repay someone else who must pay "damages" because of the injury.*

*See* Ex. H.

67.     The Umbrella Coverage Part also provides the following definitions:

**I.**     ***"Underlying insurance"*** *means the insurance policies listed in the Extension Schedule of Underlying Insurance Policies, including any renewals or replacements thereof, which provide the underlying coverages and limits stated in the Schedule of Underlying Insurance Policies . . .*

\* \* \*

**F.**     ***"Occurrence"*** *means:*

*1.     With respect to "bodily injury" or "property damage", an "accident", including continuous or repeated exposure to substantially the same general harmful conditions; and*

*2.     With respect to "personal and advertising injury", an offense described in one of the numbered subdivisions of that definition in the "underlying insurance".*

*See* Ex. H.

14

**EPL COVERAGE**

68.     The EPL Coverage Part states, in part:

### SECTION I - INSURING AGREEMENT

#### Employment Practices Liability

*We shall pay "loss" on behalf of the "insureds" resulting from an "employment practices claim" first made against the "Insureds" during the "policy period" or Extended Reporting Period, if applicable, for an "employment practices wrongful act" by the "insureds".*

*See* Ex. H.

69.     The EPL Coverage Part provides the following definitions:

***A.***     *"Application" means the application for this Coverage Part, including any materials or information submitted therewith or made available to us during the underwriting process, which application shall be on file with us. Such "application" shall be deemed a part of this Coverage Part and attached hereto. In addition, "application" includes any warranty, representation or other statement provided to us within the past three years in connection with any policy or coverage part of which this Coverage Part is a renewal or replacement.*

\* \* \*

***B.***     *"Claim" means any "employment practices claim".*

\* \* \*

***D***.      *"Claim expenses" means:*

*1. reasonable and necessary legal fees and expenses incurred in the defense or appeal of a "claim";*

*2. "Extradition costs"; or*

*3. the costs of appeal, attachment or similar bonds, provided that we shall have no obligation to furnish such bonds.*

*However, "claim expenses" shall not include:*

*a. salaries, wages, remuneration, overhead or benefit expenses associated with any of you or us;*

*b. any fees, expenses or costs which are incurred by or on behalf of a party which is not a covered "insured"; or*

*c. any fees, expenses or costs which were incurred prior to the date on which we received written notice of "claim" from the "insured". [As modified by Illinois Changes -Employment Practices Liability, Form SS 09 06 12 14].*

\* \* \*

15

**K.** *"Employment practices claim" means any:*

*1. written demand for monetary damages or other civil non-monetary relief commenced by the receipt of such demand, including, without limitation, a written demand for employment reinstatement;*

*2. civil proceeding, including an arbitration or other alternative dispute resolution proceeding, commenced by the service of a complaint, filing of a demand for arbitration, or similar pleading; or*

*3. formal administrative or regulatory proceeding, including, without limitation, a proceeding before the Equal Employment Opportunity Commission or similar governmental agency, commenced by the filing of a notice of charges, formal investigative order or similar document; by or on behalf of an "employee", an applicant for employment with an "insured entity", or an "independent contractor". "Employment practices claim" also means the receipt of a notice of violation, order to show cause, or a written demand for monetary or injunctive relief that is the result of an audit conducted by the United States Office of Federal Contract Compliance Programs. "Employment practices claim" also means a written request to the "insureds" to toll or waive a statute of limitations regarding a potential "Employment practices claim" as described above. Such "claim" shall be commenced by the receipt of such request.*

*However, "employment practices claim" shall not include any labor or grievance proceeding or arbitration that is subject to a collective bargaining agreement.*

\* \* \*

**L.** *"Employment practices wrongful act" means:*

*1. wrongful dismissal, discharge, or termination of employment (including constructive dismissal, discharge, or termination), wrongful failure or refusal to employ or promote, wrongful discipline or demotion, failure to grant tenure, negligent employment evaluation, or wrongful deprivation of career opportunity;*

*2. sexual or other workplace harassment, including bullying in the workplace, quid pro quo and hostile work environment;*

*3. employment discrimination, including discrimination based upon age, gender, race, color, creed, marital status, sexual orientation or preference, gender identity or expression, genetic makeup, or refusal to submit to genetic makeup testing, pregnancy, disability, HIV or other health status, Vietnam Era Veteran or other military status, or other protected status established under federal, state, or local law;*

*4. "Retaliation";*

*5. breach of any oral, written, or implied employment contract, including, without limitation, any obligation arising from a personnel manual, employee handbook, or policy statement; or*

16

6. *violation of the Family and Medical Leave Act.* "*Employment practices wrongful act*" *also means the following, but only when alleged in addition to or as part of any* "*employment practices wrongful act*" *described above:*

a. *employment-related wrongful infliction of mental anguish or emotional distress;*

b. *failure to create, provide for or enforce adequate or consistent employment-related policies and procedures;*

c. *negligent retention, supervision, hiring or training;*

d. *employment-related invasion of privacy, defamation, or misrepresentation; or*

e. *an* "*employee data privacy wrongful act*".

\* \* \*

**U.** "*Interrelated wrongful acts*" *means* "*wrongful acts*" *that have as a common nexus any fact, circumstance, situation, event, transaction, goal, motive, methodology, or cause or series of causally connected facts, circumstances, situations, events, transactions, goals, motives, methodologies or causes.*

\* \* \*

**FF.** "*Wrongful act*" *means any actual or alleged* "*employment practices wrongful act*".

*See* Ex. H.

70. The EPL Coverage Part also provides the following Conditions:

**G.** ***Interrelationship of Claims***

*All* "*claims*" *based upon, arising from or in any way related to the same* "*wrongful act*" *or* "*interrelated wrongful acts*" *shall be deemed to be a single* "*claim*" *for all purposes under this Coverage Part first made on the earliest date that:*

1. *any of such* "*claims*" *was first made, regardless of whether such date is before or during the* "*policy period*";

2. *notice of any* "*wrongful act*" *described above was given to us under this Coverage Part pursuant to Sections IV or VIII; or*

3. *notice of any* "*wrongful act*" *described above was given under any prior insurance policy.*

\* \* \*

**I.** ***Application***

1. The "insureds" *represent that the Declarations and statements contained in the* "*application*" *are true, accurate and complete.*

*This Coverage Part is issued in reliance upon the* "*application*".

2. *If the* "*application*" *contains intentional misrepresentations or misrepresentations that materially affect the acceptance of the risk by us no*

17

*coverage shall be afforded under this Coverage Part for any "insureds" who knew on the Effective Date of this Coverage Part of the facts that were so misrepresented, provided that:*

a.    *knowledge possessed by any "insured person" shall not be imputed to any other "insured person"; and*

b.    *knowledge possessed by any of your chief executive officer, general counsel, chief financial officer, human resources director or any position equivalent to the foregoing of the "named insured", or anyone signing the "application", shall be imputed to all "insured entities". No other person's knowledge shall be imputed to an "insured entity".*

*See* Ex. H.

71.    Endorsement No. 3, Limits of Liability Change Endorsement – Employment Practices Liability Insurance, Form SS 09 58 03 16, has a process date of February 17, 2026, but, at the request of Scholarships.com and in reliance on the representations in the Midterm Application, Endorsement No. 3 was made effective as of February 1, 2026.

72.    Endorsement No. 3, Limits of Liability Change Endorsement – Employment Practices Liability Insurance, Form SS 09 58 03 16, states in part:

**A. 1.** *The maximum we will pay for each "claim" under this Coverage Part is the applicable Each Claim Limit of Liability.*

    **a.** *For any "claim" arising out of any "wrongful act" or "interrelated wrongful acts" any of which took place on or after the "retroactive date" but prior to 02/01/26 the applicable Each Claim Limit of Liability shall be $5,000.*

    **b.** *Notwithstanding **A.1.a**. above, for any "claim" arising out of "wrongful acts" and "interrelated wrongful acts" all of which took place on or after 02/01/26, the applicable Each Claim Limit of Liability shall be $500,000 (herein, the "Higher Each Claim Limit").*

*＊ ＊ ＊*

    **3.** *If the applicable Limit of Liability for this Coverage Part is exhausted, the premium for this Coverage Part shall be deemed fully earned. "Claims expenses" shall be part of, and not in addition to, the Limits of Liability . . .*

*See* Ex. H.

18

**COUNT I**
**The $5,000 EPL Eroding Limit Applies Pursuant to the Limits of Liability Change**
**Endorsement – Employment Practices Liability Insurance**
**(EPL Coverage Part)**

73. Hartford incorporates and restates the allegations of Paragraph 1 through 72 above as if fully set forth herein.

74. The limits of EPL liability are amended by Endorsement No. 3, Limits of Liability Change Endorsement – Employment Practices Liability Insurance, Form SS 09 58 03 16, which states, in part, the $5,000 limit applies to any claim arising out of any "wrongful act" or "interrelated wrongful acts" that took place "prior to 02/01/26".

75. Endorsement No. 3, Limits of Liability Change Endorsement – Employment Practices Liability Insurance, Form SS 09 58 03 16, also states, in part, the $500,000 limit applies to any claim arising out of any "wrongful act" and "interrelated wrongful acts" "all of which took place on or after 02/01/26."

76. Endorsement No. 3, Limits of Liability Change Endorsement – Employment Practices Liability Insurance, Form SS 09 58 03 16, also states, in part that "claim expenses", as the term is defined, "shall be part of, and not in addition to, the Limits of Liability."

77. The term "wrongful act" means "any actual or alleged 'employment practices wrongful act'".

78. The term "employment practices wrongful act" means, among other things, constructive discharge and discrimination, including discrimination based on disability.

79. The IDHR Charge arises out of the denial of Claimant's request for accommodation.

80. Claimant claims the denial of her accommodation constitutes discrimination against her based on a disability.

19

81. Accordingly, the denial of Claimant's accommodation as alleged, constitutes an "employment practices wrongful act" and therefore, a "wrongful act" as defined.

82. The formal denial of Claimant's request for accommodation occurred on January 14, 2026.

83. Therefore, the IDHR Charge arises out of a "wrongful act" that occurred prior to February 2, 2026 and the $5,000 EPL limit applies.

84. The $5,000 EPL limit includes defense fees and costs and is, therefore, an eroding limit.

**COUNT II**
**The $5,000 EPL Limit Applies Because the IDHR Charge is Based on the Same "Interrelated Wrongful Acts" as the Claims in the January 29, 2026 Letter and They are Deemed to be a Single Claim First Made on January 29, 2026**
**(EPL Coverage Part)**

85. Hartford incorporates and restates the allegations of Paragraph 1 through 84 above as if fully set forth herein.

86. The term "wrongful act" means "any actual or alleged 'employment practices wrongful act'".

87. The term "employment practices wrongful act" means, among other things, constructive discharge and discrimination, including discrimination based on disability.

88. An "employment practices claim" means, among other things, "[a] written demand for monetary damages or other civil non-monetary relief commenced by the receipt of such demand".

89. "Interrelated wrongful acts" means "wrongful acts" that have as a common nexus any fact, circumstance, situation, event, transaction, goal, motive, methodology, or cause or series

of causally connected facts, circumstances, situations, events, transactions, goals, motives, methodologies or causes

90. In the January 29, 2026 Letter, Claimant's counsel identified the denial of Claimant's request accommodation as "unlawful" and contended the denial of her reasonable accommodation first on December 11, then on January 14, 2025, constituted both discrimination against a person with a disability and a constructive discharge.

91. Claimant also demanded that Scholalrships.com reverse its decision regarding the denial of her accommodation, which is a demand for civil non-monetary relief.

92. The January 29, 2026 Letter constitutes an "employment practices claim".

93. The IDHR Charge and the claims in the January 29, 2026 Letter share the same nexus of fact because they both arise from the denial of Claimant's request for an accommodation and as a result, they are claims based upon the same "wrongful act" or "interrelated wrongful acts".

94. Section IX - Conditions G. Interrelationship of Claims in the Policy states, in part, all "claims" based upon the same "wrongful act" or "interrelated wrongful acts" are deemed to be a single "claim" first made on the earliest date that any such "claim" was made.

95. Because the January 29, 2026 Letter and the IDHR Charge are claims based upon the same "wrongful act" or "interrelated wrongful acts", they are deemed to be a single "claim" first made on January 29, 2026.

96. Because the claim was first made on January 29, 2026, the $5,000 eroding EPL limit applies.

**COUNT III**
**The $5,000 EPL Limit Applies Because the IDHR Charge was a Known Loss when**
**Scholarships.com Applied for the Increased EPL Limits**
**(EPL Coverage Part)**

97.     Hartford incorporates and restates the allegations of Paragraph 1 through 96 above as if fully set forth herein.

98.     Scholarhips.com, through its representatives, received the January 29, 2026 Letter before February 2, 2026.

99.     Lawrence "Larry" Gerber received the January 29, 2026 Letter before February 2, 2026.

100.    Scholarhips.com, through its representative Lawrence "Larry" Gerber, completed the Midterm Application after receipt of the January 29, 2026 Letter, and on the same day that Claimant resigned, claiming constructive discharge as a result of Scholarships.com failure to accommodate her disability.

101.    Lawrence "Larry" Gerber was a recipient of the January 29, 2026 Letter and he received the January 29, 2026 Letter before February 2, 2026.

102.    The Midterm Application was submitted to Hartford by Scholarships.com's agent, Steve Wise, on February 10, 2026.

103.    Scholarships.com was aware that Claimant resigned and alleged she was constructively discharged before February 10, 2026.

104.    Scholarships.com was aware of the losses alleged in the January 29, 2026 Letter and the IDHR Charge before it applied for an increase in EPL limits.

105.    Pursuant to the known loss doctrine, coverage is not afforded under the increased EPL limits.

**COUNT IV**
**The $5,000 EPL Eroding Limit Applies Pursuant to the Application Condition in the Policy**
**(EPL Coverage Part)**

106. Hartford incorporates and restates the allegations of Paragraph 1 through 105 above as if fully set forth herein.

107. Section IX- Conditions, I. Application in the EPL Coverage Part states, in part, "If the 'application' contains intentional misrepresentations or misrepresentations that materially affect the acceptance of the risk by us no coverage shall be afforded under this Coverage Part for any 'insureds' who knew on the Effective Date of this Coverage Part of the facts that were so misrepresented . . ."

108. The EPL limit was increased from $5,000 to $500,000 as a result of the Midterm Application.

109. In response to Question 5 in the Midterm Application, Scholarships.com told Hartford it had not received any employment related claims or attorney letters relating to discrimination in the past three years.

110. Scholarships.com's response to Question 5 in the Midterm Application was an intentional misrepresentation and/or a misrepresentation that materially affected the acceptance of the risk by Hartford, because, among other things, it received an employment related claim and attorney letter, namely the January 29, 2026 Letter, just four days before completing the Midterm Application.

111. In response to Question 6 in the Midterm Application, Scholarships.com told Hartford it was not aware of any fact or circumstance or any actual or alleged act which might give rise to a claim that would fall within the scope of EPL coverage.

23

112. Scholarships.com's response to Question 6 in the Midterm Application was an intentional misrepresentation and/or a misrepresentation that materially affected the acceptance of the risk by Hartford, because, among other things, it was aware of the claims and allegations in the January 29, 2026 Letter before completing the Midterm Application.

113. Scholarships.com's response to Question 6 in the Midterm Application was also an intentional misrepresentation and/or a misrepresentation that materially affected the acceptance of the risk by Hartford, because, among other things, it was aware that Claimant resigned, claiming discrimination and constructive discharge, before submitting the Midterm Application to Hartford.

114. The foregoing intentional misrepresentations materially affected Hartford's acceptance of the risk when increasing the EPL limits and making the effective date retroactive to the day before Claimant resigned, claiming constructive discharge because they failed to inform Hartford of the actual risks of losses under the Policy.

115. Because the Midterm Application contains both intentional misrepresentations and misrepresentations that materially affect the acceptance of the risk, the increased EPL limits are not afforded pursuant to the Applications Condition.

**COUNT V**
**No Coverage Because No Allegations of "Bodily Injury" or "Property Damage" Caused by an "Occurrence" or "Personal and Advertising Injury"**
**(Business Liability and Umbrella Coverage Parts)**

116. Hartford incorporates and restates the allegations of Paragraph 1 through 115 above as if fully set forth herein.

117. Subject to their terms, the Business Liability and Umbrella Coverage Parts in the Policy provide coverage for claims for damages because of "bodily injury" or "property damage" caused by an "occurrence" as those terms are defined.

24

118.    Subject to their terms, the Business Liability and Umbrella Coverage Parts in the Policy also provide coverage for certain enumerated offenses that comprise the definition of "personal and advertising injury".

119.    The IDHR Charge does not allege damages because of "bodily injury" or "property damage" caused by an "occurrence" as those terms are defined.

120.    The IDHR Charge does not allege any of the offenses enumerated within the definition of "personal and advertising injury".

121.    Therefore, the IDHR Charge does not allege a claim for damages because of "bodily injury" or "property damage" caused by an "occurrence" or because of "personal and advertising injury" as those terms are defined and used in the Business Liability and Umbrella Coverage Parts in the Policy.

122.    Thus, Hartford owes no defense or indemnity obligations to Scholarships.com under the Business Liability or Umbrella Coverage Parts for the claims in the IDHR Charge.

**COUNT VI**
**The Exclusions Bar Coverage Under the Business Liability and Umbrella Coverage Parts**
**(Business Liability and Umbrella Coverage Parts)**

123.    Hartford incorporates and restates the allegations of Paragraph 1 through 122 above as if fully set forth herein.

124.    Even if the IDHR Charge did allege "bodily injury" or "property damage" caused by an "occurrence" and/or "personal and advertising injury", which Hartford denies, coverage would still be barred by various exclusions in the Policy.

**Expected and Intended Exclusion**

125.    Exclusion a. Expected or Intended Injury in the Business Liability Coverage Part bars coverage for "bodily injury" or "property damage" expected or intended from the standpoint

of the insured and "personal and advertising injury" arising out of an offense committed by, at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury".

126. Exclusion 14. Expected or Intended in the Umbrella Coverage Part excludes coverage for "bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

127. The IDHR Charge alleges Scholarships.com intentionally discriminated against Claimant by denying her request for an accommodation and intentionally engaged in unlawful conduct which resulted in her damages.

**Employers Liability Exclusion**

128. Exclusion e. Employer's Liability in the Business Liability Coverage Part bars coverage for "bodily injury" to an employee of the insured arising out of and in the course of employment by the insured or performing duties related to the conduct of the insured's business.

129. Exclusion 15. Employer Liability in the Umbrella Coverage Part bars coverage for any injury or damage to any "employee" of any "insured" arising out of or in the course of employment by any "insured".

130. Claimant is a former "employee" as defined in the Policy.

131. Claimant's claims arise out of and in the course of her employment with Scholarships.com.

**Employment-Related Practices Exclusion**

132. Exclusion r. Employment-Related Practices in the Business Liability Coverage Part bars coverage for "personal and advertising injury" to a person arising out of any "employment-related practices".

26

133.    Exclusion 18 Employment Related Practices Liability in the Umbrella Coverage Part bars coverage for any injury or damage to a person arising out of, among other things, termination of that person's employment or any employment-related practices.

134.    Claimant alleges she was constructively terminated as a result of an employment-related practice, namely, the denial of her request for an accommodation.

**Personal and Advertising Injury (Umbrella Coverage Part)**

135.    The Umbrella Coverage Part contains an exclusion, as modified by Following Form Endorsement -Personal and Advertising Injury, Form SX 24 33 06 10, which bars coverage for "personal and advertising injury" unless such "personal and advertising injury" is provided by the "underlying insurance".

136.    The "underlying insurance" is the Business Liability Coverage Part.

137.    Because no coverage is afforded for "personal and advertising injury" in the Business Liability Coverage Part, this exclusion bars "personal and advertising injury" coverage under the Umbrella Coverage Part.

138.    Accordingly, given the foregoing, to the extent the IDHR Charge alleges "bodily injury" or "property damage" caused by an "occurrence" and/or "personal and advertising injury", which Hartford denies, these exclusions bar coverage under the Business Liability and Umbrella Coverage Parts in the Policy.

**COUNT VII**
**Rescission of Endorsement No. 3, Limits of Liability Change Endorsement – Employment Practices Liability Insurance, Form SS 09 58 03 16**
**(EPL Coverage Part)**

139.    Hartford incorporates and restates the allegations of Paragraph 1 through 138 above as if fully set forth herein.

27

140.    Scholarships.com knowingly or otherwise made material misrepresentations and/or omissions in connection with the Midterm Application when applying for the increased limits and retroactive effective date of coverage as set forth in Endorsement No. 3, Limits of Liability Change Endorsement – Employment Practices Liability Insurance, Form SS 09 58 03 16.

141.    These material misrepresentations and/or omissions were made to induce Hartford to issue Endorsement No. 3, Limits of Liability Change Endorsement – Employment Practices Liability Insurance, Form SS 09 58 03 16.

142.    In underwriting and issuing Endorsement No. 3, Limits of Liability Change Endorsement – Employment Practices Liability Insurance, Form SS 09 58 03 16, Hartford reasonably relied to its detriment on the belief that Scholarships.com had truthfully and fully disclosed all pertinent information relating to the questions in the Midterm Application.

143.    Scholarships.com's nondisclosure and misrepresentations materially affected the risk assumed by Hartford in underwriting and issuing Endorsement No. 3, Limits of Liability Change Endorsement – Employment Practices Liability Insurance, Form SS 09 58 03 16.

144.    Had Hartford known the true facts concerning Claimant's claims and allegations of discrimination, Hartford would not have underwritten or issued Endorsement No. 3, Limits of Liability Change Endorsement – Employment Practices Liability Insurance, Form SS 09 58 03 16.

145.    Endorsement No. 3, Limits of Liability Change Endorsement – Employment Practices Liability Insurance, Form SS 09 58 03 16 is voidable based on the material misrepresentations and/or omissions associated with the Midterm Application.

146.    Hartford is excused from performing any obligations under Endorsement No. 3, Limits of Liability Change Endorsement – Employment Practices Liability Insurance, Form SS 09 58 03 16 based on the material misrepresentations and/or omissions made by Scholarships.com in

28

applying for the coverage provided under Endorsement No. 3, Limits of Liability Change Endorsement – Employment Practices Liability Insurance, Form SS 09 58 03 16.

147.     Upon an Order rescinding Endorsement No. 3, Limits of Liability Change Endorsement – Employment Practices Liability Insurance, Form SS 09 58 03 16, Hartford will return all premiums Scholarships.com paid for Endorsement No. 3, Limits of Liability Change Endorsement – Employment Practices Liability Insurance, Form SS 09 58 03 16.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Hartford prays this Court enter the following relief:

A.      A declaration finding that Hartford only owes Scholarships.com an eroding $5,000 EPL Coverage Limit for the claims relating to the IDHR Charge.

B.      A declaration finding Hartford owes no defense or indemnity obligations for the claims relating to the IDHR Charge under the Business Liability and Umbrella Coverage Parts;

C.      Alternatively, an Order rescinding Endorsement No. 3, Limits of Liability Change Endorsement – Employment Practices Liability Insurance, Form SS 09 58 03 16; and

D.      For all such just and equitable relief, including costs of this suit.

Respectfully Submitted,

By: _/s/ Michael J. O'Malley_
Attorney for
**HARTFORD CASUALTY
INSURANCE COMPANY**

Michael J. O'Malley
Michael J. Duffy
Joanna C. Kocol
Wilson Elser Moskowitz Edelman & Dicker LLP
161 N. Clark Street, Suite 4500
Chicago, Illinois 60601
312.704.0550 (Main)
Michael.O'Malley@wilsonelser.com
Michael.Duffy@wilsonelser.com
Joanna.Kocol@wilsonelser.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2026, I caused to be filed through the United States District Court CM/ECF System the foregoing document, causing it to be served by electronic means on all counsel of record.

*/s/ Joanna C. Kocol*
Joanna C. Kocol